SAVOIE, Judge.
George Bernard “Benny” Brown (defendant) was indicted by the East Baton Rouge Parish Grand Jury for the second degree murder of Sheri Lynn Daigle, a violation of LSA-R.S. 14:30.1. Defendant entered a plea of not guilty; and, at trial, the jury found defendant guilty as charged. Subsequently, the trial court sentenced defendant to the mandatory term of life imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence. Defendant has appealed, urging thirteen assignments of error:
1. The trial court erred by denying defendant’s motion for post-verdict judgment of acquittal.
2. The trial court erred by denying the defense the opportunity to elicit, through the testimony of Detective Strickland, the statements of an unavailable witness, Jammie Gary.
3. The trial court erred by denying defendant’s motion for a mistrial based on the state’s elicitation of unreliable testimony regarding an alleged threat made by defendant.
4. The trial court erred by admitting defendant’s statement into evidence.
5. The trial court committed error when it overruled the defense objection to the excision of exculpatory evidence from defendant’s taped statement.
6. The trial court erred by allowing the transportation of the jury to the location where the victim’s body was discovered.
7. The trial court erred by admitting into evidence numerous items of physical evidence that had no relevance and numerous repetitive photographs.
8. The trial court erred by overruling the defense objection to the state’s inference during closing argument that the defense had an obligation to produce evidence to carry a burden of proof.
9. The trial court erred by failing to order the state to provide certain answers to defendant’s motion for discovery, motion for bill of particulars, motion for exculpatory evidence and motion for the production of the initial offense report.
10. The trial court erred by sustaining the state’s objection to testimony regarding the victim’s state of mind in reference to her boyfriend, a possible suspect.
11. The trial court erred by allowing the state to elicit an unreliable hearsay statement of the victim.
12. The trial court erred by allowing the state to elicit testimony that defendant was “wanted” for an unauthorized entry of an inhabited dwelling.
13. The trial court erred by denying defendant’s motion for a mistrial on the basis that three jurors viewed defendant handcuffed and dressed in prison garb being escorted by a deputy sheriff.
In his original brief, defendant noted that assignments of error numbers four, five, seven, eight and twelve were abandoned. Uniform Rules — Courts of Appeal, Rule 2-12.4. Because we find defendant’s assign *325 ment of error number eleven is meritorious and requires reversal of defendant’s conviction and sentence, we pretermit discussion of defendant’s other assignments.
The victim’s body was discovered by two men on the early afternoon of May 7, 1987, in a heavily overgrown area behind a vacant house. The victim lay in a head-first position inside a septic tank. The cause of death was determined to be inhalation of some of the contents of the septic tank. Severe head injuries, probably caused by a trauma inflicted with a metallic instrument, were also apparent.
Through the testimony of various witnesses, defendant was placed in the company of the victim, in defendant’s car, on the afternoon before her death. It was also shown that defendant was very familiar with the location where the body was found, although he initially denied having any knowledge of that location and tried to conceal that knowledge. The state’s case consisted of ah extensive and complicated set of interwoven, circumstantial factors. No direct evidence of guilt was adduced.
ASSIGNMENT OF ERROR NO. ELEVEN:
By means of this assignment, defendant contends that the trial court committed reversible error by allowing the state to elicit from state witness Michael S. Hood an unreliable hearsay statement of the victim. Defendant argues that, contrary to the state’s assertion that the statement was admissible to show the victim’s state of mind, the victim’s state of mind was not at issue or relevant to a fact at issue and that the statement was offered only to prove defendant’s acts and not those of the victim. Defendant asserts that Hood’s testimony as to the victim’s statement was magnified and was highly prejudicial because, in its closing arguments to the jury, the state theorized that defendant killed the victim when she refused to have sex with him.[1] In conclusion, defendant argues that, under State v. Weedon, 342 So.2d 642 (La.1977), the statement was clearly inadmissible hearsay, which allowed the jury to infer that he had a motive for killing the victim.
Michael Hood’s testimony was that, on May 5, 1987, at approximately 6:30 or 7:00 p.m., he observed defendant and the victim on the sidewalk talking to each other. Hood could not hear their conversation. Thereafter, the victim disclosed the subject matter of the conversation to Hood.
When the state sought to elicit Hood’s testimony as to the victim’s disclosure to him, defense counsel objected on hearsay grounds. The prosecutor countered that the testimony sought to be elicited was being offered to show the victim’s state of mind. At that juncture, the jury was retired from the courtroom; and the witness was permitted by the trial court to state that the victim had disclosed to him that “[defendant] wanted to have sex with her [and that] she didn’t want anything to do with him.” After the trial court ruled .that the testimony sought to be elicited was admissible, the jury was returned to the courtroom. The prosecutor then resumed her examination of the witness as follows:
Q. Michael, was there a conversation that you observed — not heard, but observed between the defendant and Sheri?
A. Yes.
Q. And after that conversation, who went where?
A. Well, he walked off, and me [sic] and Sheri went up to Jackie’s apartment.
Q. Did Sheri tell you what the defendant had said?
A. Yes.
Q. Could you please relate to the ladies and gentlemen of the jury the nature of their conversation?
A. Well, I had asked her what he had said or wanted, and she told me that he wanted to have sex with her, and she didn’t want anything to do with him.
Hearsay is an out-of-court assertion introduced to prove the truth of its content. *326 State v. Weedon, 342 So.2d 642, 646 (La. 1977). Hearsay is generally inadmissible because of its historic unreliability and because of the unfairness to the defendant who cannot test the truth of the statement. State v. Doze, 384 So.2d 351, 353 (La.1980).
In brief, the state asserts that the victim’s statement was elicited to show future conduct of the victim and not that of defendant, i.e., that had defendant made a sexual advance toward the victim she would have resisted. Notwithstanding that assertion, based upon the entirety of the state’s argument in brief, it is clear that the state theorized that defendant initially tried to have sex with the victim and that, as a consequence of her resistance, he killed her.
In the testimony at issue herein, the victim’s statement constituted an out-of-court assertion of the victim’s state of mind, i.e., that (in reference to defendant’s desire to have sex with her) she “didn’t want anything to do with [defendant].” Declarations of mental state are generally admissible as an exception to the hearsay rule if introduced to prove the state of mind of the declarant, when that state of mind is at issue. State v. Doze, 384 So.2d at 353. Herein, however, we find that the state of mind of the victim was not at issue. Crucial to that determination, we note that there was no evidence that the victim had communicated her state of mind to defendant. Only if there had been such a communication could the victim’s state of mind have been relevant to defendant’s subsequent conduct. See State v. Doze, 384 So.2d at 353; State v. Weedon, 342 So.2d at 647.
In this ease, it is clear that the prosecution used the hearsay statements related through Michael Hood’s testimony more to provide evidence of a motive than to prove the victim’s state of mind. See State v. DiLosa, 529 So.2d 14, 17 (La.App. 5th Cir. 1988). Accordingly, in the absence of any evidence that the victim’s state of mind was actually communicated to defendant, the hearsay evidence related through Michael Hood’s testimony was inadmissible to prove motive. See State v. Doze, 384 So.2d at 354.
The appropriate standard of review to be applied in determining the effect of the improper admission of evidence is whether “ ‘the court [can] ... declare a belief that [the error] was harmless beyond a reasonable doubt.’ ” State v. Gibson, 391 So.2d 421, 428 (La.1980), quoting and adopting Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The court must be able to determine, beyond a reasonable doubt, that the improperly admitted hearsay did not contribute to the verdict. State v. Banks, 439 So.2d 407, 409 (La.1983). Herein, the state’s case for the otherwise apparently motiveless killing of the victim depended entirely upon inferences by the trier of fact from circumstantial evidence. Applying the standard of review referred to above, we are unable to reach any conclusion other than that the erroneously admitted evidence amounted to reversible error.
For the above and foregoing reasons, the defendant’s conviction and sentence are reversed, and this case is remanded to the trial court for further proceedings in accordance with law.
REVERSED AND REMANDED.
SHORTESS, J., dissents with reasons.

. We note that, with the exception of the prosecutor’s closing argument on rebuttal, the appellate record in this case did not include a transcription of the opening or closing statements to the jury.